Filed 3/14/16  P. v. Carter CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B266075 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA136241) |
| v. | |
| LUTHER RAY CARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed.

Laurel Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Luther Ray Carter (Carter) appeals from a judgment sentencing him to three years in county jail for automotive burglary (Pen. Code, § 459[1]).  We affirm.

**BACKGROUND**

## I.    The Burglary

At approximately 5:15 p.m. on December 30, 2015, Laura Cruz (Cruz), the manager of a Subway restaurant on East Compton Boulevard in Compton, left work to go home.  However, her car, a 2003 Chevy Malibu, would not start.  As it was too late in the day to have the car repaired, she locked the car and left it in the parking lot in front of the restaurant.

The next morning, at approximately 5:00 a.m., Claudia Fernandez (Fernandez), one of Cruz's shift supervisors/cashiers, arrived for work and observed that the front passenger side window of Cruz's car's was broken.  Fernandez replayed the video from the restaurant's security cameras, which showed a man wearing a "beanie and black hoody" sweatshirt smashing the car window by throwing a rock at it.  After breaking the window, the man opened the car door, rummaged through the car's interior, grabbed something, stuffed it into a backpack, and then "took off."  After she had reviewed the video, Fernandez saw Carter outside the restaurant; she recognized him as being the same man in the video by his clothing.  Fernandez first called the police and then called Cruz.

When the police arrived, they detained Carter.  Before questioning Carter, the police spoke to Fernandez and reviewed the video.  After studying the video, the police reached the same conclusion as Fernandez—that is, Carter and the man on the video were one and the same.  The police arrested Carter, and, after reading him his *Miranda*[2] rights, began questioning him.  When asked why he had broken the car window, Carter told the police that "he was mad."  The police then asked Carter to make a written statement, which he did:  "I broke the window because I was mad, and I took papers out of the glove compartment from the car."  Cruz, after she had a chance to examine her car, including

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

the contents of the glove compartment, determined that the car's registration and some bank receipts were missing.

## II.    Trial and Sentencing

On April 21, 2015, The People filed an information charging Carter with second degree burglary. The information also alleged, pursuant to section 667.5, subdivision (b), that Carter had suffered five prior convictions: April 15, 2014, case number TA132893 (second degree burglary, § 459); April 4, 2013, case number TA127545 (driving or taking another person's vehicle, Veh. Code, § 10851); January 13, 2012, case number TA121586 (second degree burglary, § 459); September 8, 2010, case number TA114197 (dangerous weapons, § 12020, subd. (a)(1)); September 13, 2007, case number VA089702 (accessory after the fact, § 32).

On June 22, 2015, after deliberating for less than two hours, the jury returned a guilty verdict. On July 29, 2015, Carter's counsel submitted a sentencing memorandum arguing that, at the time of the instant offense, Carter was suffering from the mental anguish of a family tragedy—two months before the instant offense, Carter's brother had been convicted of murdering Mireya McCall (McCall), the 5-year-old niece of both Carter and his brother, with Carter assisting law enforcement in gathering evidence against his brother.[3]

On July 30, 2015, the trial court sentenced Carter to the upper term of three years. Each prior conviction was admitted or proven to the court. The trial court, however, elected to strike the prior convictions for sentencing purposes in the interest of justice pursuant to section 1385, subdivision (a). The trial court explained that while the Carter family tragedy "doesn't excuse [his] conduct in this case . . . it does somewhat put [his] history in context." In addition, the trial court observed that while the instant offense "is a serious crime," it "isn't the worst offense that's ever come before [the] court."

---

[3] The record is incomplete with respect to the details regarding the death of McCall. The sentencing memorandum submitted by Carter's counsel and the supporting materials attached thereto focused on the effect that the murder and Carter's brother's conviction had on Carter.

On August 4, 2015, Carter filed a timely notice of appeal.  On October 19, 2015, we appointed counsel to represent him, and, after examining the record, counsel filed an opening brief raising no issues and asking this court to review independently the record in this case.  On January 20, 2016, we advised Carter that he had 30 days in which to submit any contentions or issues that he wished us to consider.  To date, we have received no response.

We have examined the entire record and are satisfied that Carter's counsel has fully complied with her responsibilities and that no arguable issues exist.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110; *People v. Wende* (1979) 25 Cal.3d 436, 441.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

4